UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

DANIEL CAPPO,

               Plaintiff,                        Case No. 2:14-cv-210

v.                                        HON. TIMOTHY P. GREELEY

COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.

_____/

## OPINION

          Plaintiff filed an application for disability insurance benefits under Title II of the

Social Security Act on June 11, 2013. *See* Transcript of Administrative Hearing at page 10

(hereinafter Tr. at ___).  Plaintiff alleges that he became disabled on June 9, 2009, due to

impairments of his back and knees, as well as mental health issues. Tr. at 10, 52-55, 59-60. On

September 9, 2013, Plaintiff's application was denied, and on November 5, 2013, Plaintiff filed a

request for an administrative hearing before an Administrative Law Judge (ALJ).  Tr. at 10.  The

ALJ held a video hearing on March 21, 2014.  *Id.*  At the hearing, Plaintiff was represented by

counsel.  *Id.*  Testifying at the hearing were Plaintiff and vocational expert David Ostwald.  Tr. at

80.  In a decision issued May 28, 2014, the ALJ denied Plaintiff's claim for benefits.  Tr. at 10-

30.  Plaintiff then filed this action on October 7, 2014.  Docket # 1.

          Plaintiff suffers from degenerative disc disease, asthma, traumatic brain injury,

and post-traumatic stress disorder.  Tr. at 15.  At his hearing, Plaintiff testified that he previously

worked as a supervisor/ice bagger and as a machinist for the military.  Tr. at 48-50.  He testified

that he was injured by an IED while on duty on June 9, 2009.  *See* Tr. at 41, 61.  Since that time,

Plaintiff stated that his back sometimes gives out (requiring him to use a back brace and cane), and that he can no longer sit or stand for more than ten minutes at a time. Tr. at 53-54, 72. He indicated that he drives once or twice a week, and when driving for long distances, he has to stop approximately every twenty minutes. Tr. at 82. Plaintiff testified that he does about five minutes of dishes, shoveling, or laundry a day when possible. Tr. at 66, 70-71. Moreover, he has headaches that sometimes turn into migraines about three to five times a week. Tr. at 61. While Plaintiff remained employed by the army and on active duty until June 27, 2012, he claims that he has not really worked since his accident on June 9, 2009. Tr. at 41, 44-45, 47.

Vocational expert David Ostwald testified at the hearing and was asked to evaluate Plaintiff's ability to perform his past relevant work based on several different hypotheticals. Tr. at 80. The first hypothetical scenario asked if a person with Plaintiff's past relevant work experience that had the following limitations would be able to perform Plaintiff's past job as a supervisor/ice storage worker and a mechanic: work at the light exertional level, except that the individual would be unable to climb ladders, ropes, or scaffolds; limited to occasional climbing of ramps and stairs; occasional balancing, stooping, kneeling, crouching, and crawling; not operate foot controls with the lower right extremity; avoid concentrated exposure to extreme cold, wetness, humidity, vibration, and fumes, odors, dust, gases, and poor ventilation; avoid exposure to all hazards; limited to simple, routine and repetitive work tasks involving simple work-related decisions; and, limited to occasional contact with coworkers, supervisors, and the public. Tr. at 82-83. Mr. Ostwald stated that this person would likely be able to work as a supervisor/ice storage worker as long as the cold condition was modified, but not as a mechanic; however, this person could perform work requiring general and light cleaning (3,000-

3,500 jobs), or work as an office helper (1,000 to 1,500 jobs), and a marker (4,000-5,000 jobs).
Tr. at 83-85.  The ALJ next asked Mr. Ostwald what positions would be available for someone
that could do sedentary exeterional level work with the same restrictions as outlined in the
previous hypothetical.  Tr. at 85.  Mr. Ostwald stated that this person could do some inspector,
tester, or sorter work (200-500 jobs locally; 8,000-10,000 jobs nationally) and some machine-
tending work (500 to 1,000 jobs locally; 8,000-10,000 jobs nationally).  Tr. at 85-86.  The ALJ's
next hypothetical used the same restrictions, and added the option of alternating between sitting
and standing (with sitting limited to one hour at a time and standing or walking limited to ten
minutes at a time).  Tr. at 86.  Mr. Ostwald testified that the same sedentary work would be
available for this person as mentioned in the second hypothetical.  Tr. at 87.  The ALJ added the
condition of using a cane for ambulation, and Mr. Ostwald stated that this person would be able
to do the same work as listed in the sedentary hypothetical as well.  *Id.*  For the ALJ's last
hypothetical, he added the requirement that the person take unscheduled breaks four to five times
during the work week for a minimum of thirty minutes at a time. *Id.*  Mr. Ostwald stated there
would be no jobs available for such a person.  *Id.*

        The ALJ determined that Plaintiff suffers from degenerative disc disease, asthma,
traumatic brain injury, and post-traumatic stress disorder.  Tr. at 15.  Based on these conditions
and the ALJ's determination of Plaintiff's physical and mental capabilities, the ALJ concluded
that Plaintiff could not perform his past relevant work.  Tr. at 28-29.  However, she concluded
that there were other jobs existing in significant numbers in the national economy that Plaintiff
could perform. *Id.*

        Plaintiff filed an appeal in this Court on October 7, 2014 (docket # 1), alleging

that the ALJ's decision to deny social security benefits to Plaintiff was improper because the ALJ's RFC finding did not take into account Plaintiff's chronic headaches. Docket # 10. Defendant Commissioner of Social Security filed a Response on December 19, 2014. Docket # 11. Plaintiff filed a Reply on March 16, 2015. Docket # 12. The matter is now ready for a decision.

"Our review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Winslow v. Comm'r of Soc. Sec.*, 566 Fed. App'x 418, 420 (6th Cir. 2014) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); *see also* 42 U.S.C. § 405(g). The findings of the ALJ are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Jones v. Sec'y, Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). This Court is not permitted to try the case *de novo*, nor resolve conflicts in the evidence and cannot decide questions of credibility. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *see Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (noting the ALJ's decision cannot be overturned if sufficient evidence supports the decision regardless of whether evidence also supports a contradictory conclusion). This Court is required to examine the administrative record as a whole and affirm the Commissioner's decision if it is supported by substantial evidence, even if this Court would have decided the matter differently. *See Kinsella v. Schwikers*, 708 F.2d 1058, 1059 (6th Cir. 1983); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (holding that the court must affirm a Commissioner even if substantial evidence

-4-

would support the opposite conclusion).

The ALJ must employ a five-step sequential analysis to determine if Plaintiff is under a disability as defined by the Social Security Act. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). If the ALJ determines Plaintiff is or is not disabled under a step, the analysis ceases and Plaintiff is declared as such. 20 C.F.R. § 404.1520(a). Steps four and five use the residual functional capacity assessment in evaluating the claim. *Id.*

At step one, the ALJ determined that Plaintiff engaged in substantial gainful activity from June 9, 2009, through July 27, 2012; however, Plaintiff had not engaged in substantial gainful activity since July 27, 2012 (much later than Plaintiff's alleged onset date of June 9, 2009). Tr. at 14; *see* 20 C.F.R. § 404.1520(b). At step two, the ALJ determined Plaintiff has the following severe impairments: degenerative disc disease, asthma, traumatic brain injury, and post-traumatic stress disorder. Tr. at 15. At step three, the ALJ determined Plaintiff's impairments or a combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. part 404, Subpart P, Appendix 1. Tr. at 17-18. At step four, the ALJ determined Plaintiff has the residual functional capacity (RFC) to perform sedentary work, as defined in 20 C.F.R.§ 404.1567(a), with the additional limitations: he cannot operate foot controls with right lower extremity; he can occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs; never climb ladders, ropes or scaffolds; avoid concentrated exposure to extreme cold, wetness, humidity, vibration and fumes, odors, dusts, gases and poor ventilation, and all exposure to hazards; perform simple, routine, and repetitive work tasks involving simple work-related decisions; have occasional contact with coworkers, supervisors, and the public. Tr. at 18. At step five, the ALJ concluded that Plaintiff could not

perform his past relevant work, but that there were jobs available in significant numbers in the national economy that Plaintiff could do, such as: inspector (200-500 jobs locally; 8,000 to 10,000 jobs nationally) and production worker (500 to 1,000 jobs locally; 8,000 to 10,000 jobs nationally).  Tr. at 29-30.  Therefore, the ALJ held that Plaintiff was not disabled during the time period from his alleged onset date through his date last insured.  Tr. at 30.

Plaintiff contends that the ALJ did not properly account for Plaintiff's "severe," debilitating headaches in her RFC finding, and that there was not substantial evidence on record to support the ALJ's RFC determination.  Docket #10.  Upon review of the evidence on record, this Court affirms the ALJ's conclusions.

Plaintiff claims that the ALJ's RFC finding is not supported by substantial evidence primarily because the ALJ did not address Plaintiff's complaints of chronic, consistent headaches. The ALJ's RFC finding indicated that Plaintiff could perform sedentary work with several limitations.  Tr. at 18, 30; *see* 20 C.F.R. § 404.1567(a). The ALJ's RFC finding states that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that he cannot operate foot controls with the right lower extremity.  The claimant can occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs and never climb ladders, ropes or scaffolds. He should avoid concentrated exposure to extreme cold, wetness, humidity, vibration and fumes, odors, dusts, gases and poor ventilation and all exposure to hazards.  The claimant can perform simple, routine and repetitive work tasks involving simple work-related decisions.  He can have occasional contact with coworkers, supervisors and the public.

Tr. at 18. Plaintiff claims that even though this RFC finding is detailed, it does not address

Plaintiff's chronic, severe headaches that "render him off task for considerable periods of time." Docket # 10 at 5.  Plaintiff cites both his subjective complaints and NP Judith Bjork's opinion as evidence supporting his conclusion that the RFC finding is improper.[1]

An RFC finding is what a person is able to do despite his or her limitations. SSR 96-8p, 1996 WL 374184, at *1 (noting an RFC is not the *least* a person can do, but rather the *most* a person can do).  The ALJ makes RFC findings.  *Id.* at *2.  In making an RFC determination, the ALJ must consider "only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms."  *Id.* at *1.  The RFC finding must be based on all relevant evidence on record, including an individual's medical history, reports of daily activity, and recorded observations, for example. *Id.* at *5.

Plaintiff first contends that his subjective complaints pertaining to his chronic headaches were not afforded sufficient weight, and therefore the RFC determination is improper and not supported by substantial evidence.  When an ALJ evaluates an individual's complaints of pain and disabling symptoms, the ALJ may consider the credibility of the person.  *Walters v. Comm'r of Soc. Sec'y*, 127 F.3d 525, 531 (6th Cir. 1997).  "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Id.* (citing *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987).  An ALJ's determination of a plaintiff's credibility must be supported by substantial evidence.  *Id.*; *Winslow*,

---

[1] Notably, however, Plaintiff's subjective complaints are the only piece of evidence showing that his headaches render him "off task" for considerable periods of time. Docket # 10 at 5.

566 Fed. App'x at 422.  Simply stating that Plaintiff has pain or other symptoms is not sufficient to establish that the individual is disabled.  *Walters*, 127 F.3d at 531 (citing 20 C.F.R. § 404.1529(a)).  The ALJ must assess an individual's pain by using a two prong test:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Id.* (referencing *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994) (quoting *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)); *see also* 20 C.F.R. § 404.1529(a).  "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence."  *Walters*, 127 F.3d at 531 (citing *Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988)).  An ALJ can also consider an individual's ability to do household and social activities when assessing the credibility of a person's alleged pain and disabling symptoms.  *Id.* at 532.

In determining that Plaintiff's allegations of pain and disabling symptoms were not credible, the ALJ identified several inconsistencies between Plaintiff's testimony and the medical (and non-medical) records provided.  The ALJ appropriately evaluated and considered Plaintiff's allegations of pain in his decision:

> The claimant premised his application for disability insurance benefits on allegations of degenerative disc disease, back spasm, a traumatic brain injury, a knee impairment, asthma, dyslexia, post-traumatic stress disorder, attention deficit hyperactivity disorder and a learning disability.  Since filing his application, he reported worsening of his symptoms, noting that his conditions limited every

-8-

> aspect of his life. The claimant alleged that his conditions affected his ability to lift, stand, walk, sit, squat, bend, kneel, climb stairs, reach, remember, complete tasks and get along with others. Specifically, he stated that he could lift no more than 25 pounds and that he could walk only ten minutes before needing to stop and rest. He further stated that he did not finish what he started and that he had trouble completing tasks.

Tr. at 19. Despite these allegations, the ALJ determined Plaintiff's testimony pertaining to his

pain and disabling symptoms was not entirely credible:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; **however, the claimant's statement's concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible** for the reasons explained in this decision.
>
> As previously stated, the claimant served in the United States Army from 2004 to July 2012. The claimant's service is commendable and included two deployments. His first deployment was to Iraq for 15 months from 2006 to 2007 and the second was to Afghanistan from January 2009 to September 2009. He has reported sleeping problems since his first deployment while exposed to multiple firefights. During his second deployment, while working as a mechanic, he experienced two back injuries while working as a mechanic. Treatment records also indicate that the claimant was exposed to an IED attack in June 2009 in Afghanistan. The claimant was seen in Germany for post-traumatic stress disorder, traumatic brain injury, insomnia, nightmares, post-concussion syndrome and was advised upon return to follow up with treatment.
>
> The claimant's unit was set to deploy in November 2010, but the claimant was found "Not Fit for Duty" due to back problems. The record supports a finding that the claimant was not deployable after the alleged onset date. However, the record does not support a finding that the claimant has been unable to perform all work related activity since June 9, 2009. Although the claimant has alleged that he has been unable to engage in all work related activity since June 9, 2009, there are very few treatment records to review prior to May 2010.

. . .

In October of 2010, the claimant presented for a traumatic brain injury evaluation. He reported **symptoms of headaches**, occasional ringing in the ears, insomnia, dizziness, anxiety, nightmares, irritability, stress and **sensitivity to light and noise**. On examination, the claimant was alert and oriented. He demonstrated intact rapid alternating movements, finger-to-nose movements and heel-to-shin movements. He maintained 5+ strength bilaterally in the upper and lower extremities. The claimant had a normal gait and Romberg's sign was negative. His lungs were clear to auscultation bilaterally. These observations and findings are consistent with relatively mild musculoskeletal, respiratory and neurologic symptoms, contrary to the claimant's allegations. The **examiner diagnosed a history of** concussion, **headache syndrome**, insomnia, anxiety, tinnitus, **lightheadedness**, tobacco use and referred the claimant for psychiatric care. The **examiner released the claimant without limitations**. The claimant has been treated with medication for headaches. **However, the record does not support a finding that he has experienced headaches with a frequency or severity that would result in a finding that the claimant is precluded from performing all work** related activity. In July 2011, the claimant reported to treating mental health professionals that he was traveling from Texas to Washington to visit his girlfriend's family, which involved a straight 34-hour drive. If the **claimant were experiencing the severity and frequency of symptoms he alleged, it would be unlikely that the claimant would undertake such demanding travel**. Similarly, this strongly suggests that his back impairment did not prevent the claimant from sitting.

. . .

In June of 2011 . . . he reported that he continued to experience insomnia, headaches and back pain. On examination, the claimant was alert and oriented. He demonstrated normal speech . . . . Later that month, Rosanna Brown, P.A.-C., released the claimant with work duty restrictions, but she did not include the specific restrictions. To the extent that this constitutes an opinion, the undersigned gives it very little weight as it was quite vague.

. . .

Also in May of 2013, the claimant presented to Debra J. Morley,

M.D., a neurologist, for a traumatic brain injury consultation. The claimant reported to Dr. Morley that he was given a service rating of zero percent for traumatic brain injury while in Fort Hood[,] Texas. He reported that his service officer told him to refile his claim because he was experiencing memory problems. At that time, the claimant reported that he experienced a head injury in 2009 and that he returned to his regular job as a mechanic following the accident . . . . Dr. Morley noted that while the claimant sustained a mild traumatic brain injury in 2009, an MRI of the brain performed in 2010 was unremarkable. Dr. Morley concluded that the claimant likely did suffer a single mild traumatic brain injury during the IED detonation on his vehicle. She stated that such a mild injury would not be associated with any significant cognitive sequalea and certainly would not explain his complaints of progressive memory loss and forgetfulness. **Dr. Morley's observations and assessment further suggest that the claimant's traumatic brain injury does not cause functional limitations beyond those included in the above-referenced residual functional capacity**.

. . .

The claimant has moderate limitations in concentration, persistence or pace. In July of 2013, the claimant reported that he was able to pay bills, count change, handle a savings account and use a checkbook and money orders. At that time, he reported that his hobbies included watching television, playing video games and playing board games. **The claimant has continued to engage in activities that require the ability to concentrate, such as drive, manage his finances, volunteer on a school bus and watch young children, which strongly suggests that the claimant has the ability to concentrate.** However, considering the claimant's subjective complaints and the combined effects of his post-traumatic stress disorder and traumatic brain injury, the undersigned finds that the claimant has moderate limitations in concentration, persistence or pace.

. . .

**Overall, this evidence is not consistent with the claimant's allegations made through his representative, that he cannot sustain even sedentary exertional work due to his physical limitations and that he cannot engage in basic work activities due to his mental limitations.** The claimant was treated conservatively with good results. The objective medical evidence has revealed

> relatively mild abnormalities and examiners did not observe findings
> consistent with functional limitations beyond those included in the
> above-referenced residual functional capacity.

Tr. at 19-21, 24 (citations omitted) (emphasis added).  The ALJ's assessment of Plaintiff's pain

and disabling symptoms is thorough and complete. The ALJ properly concluded that Plaintiff's

debilitating headache allegations were inconsistent with the medical evidence, and therefore

appropriately afforded little weight.[2] *See, e.g., Winslow*, 566 Fed. App'x at 422 (demonstrating

that ALJ found claimant's alleged functional limitations not credible because it largely conflicted

with credible, objective medical evidence).  Thus, this Court affirms the ALJ's RFC

determination.

Next, Plaintiff contends that the ALJ did not afford NP Judith Bjork's opinion

sufficient weight when making his RFC determination. Docket # 10 at 1, 9-10 (citing Tr. 908,

912) (noting that NP Bjork concluded that Plaintiff's "[h]eadaches result in going to a quiet dark

area 1-2 times a week, 30 minutes to one hour," which Plaintiff believes renders him incapable of

working at any level).

When determining a claimant's RFC, "[i]t is well established that the ALJ may

not substitute his medical judgment for that of the claimant's physicians."  *Brown v. Comm'r of

Soc. Sec.*, No. 1:14-CV-236, 2015 WL 1431521, *7 (W.D. Mich. Mar. 27, 2015) (citing *Meece v.

Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006)); *see Simpson v. Comm'r of Soc. Sec.*, 344

---

[2]For example, Plaintiff claims he cannot work because his chronic headaches are sporadic, unpredictable, and debilitating; however, reports show that he is capable of performing competitive work at the sedentary level. *See, e.g.,* Tr. at 1651-52 (stating he can perform sedentary work with limitations); Tr. at 1560-63 (noting Plaintiff's TBI only moderately impacts his occupational and social impairments; "such a mild [TBI] injury would not be associated with any significant cognitive sequalae. It would certainly not explain his complaints of progressive memory loss and forgetfulness . . . . MRI was unremarkable;" and Plaintiff can babysit his son regularly, go shopping, go to the movies, do laundry, watch TV, play video games, and shovel).

Fed. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Charter*, 98 F.3d 966, 970 (7th Cir. 1996)

("ALJs must not succumb to the temptation to play doctor and make their own independent

medical findings.").  However, when evaluating the claimant's RFC, the ALJ is not required to

base his or her RFC findings entirely on a physician's opinion.  *See Rudd v. Comm'r of Soc. Sec.*,

531 Fed. App'x 719, 728 (6th Cir. 2013) (quoting SSR-96-5p) ("[T]o require the ALJ to base her

RFC finding on a physician's opinion, 'would, in effect, confer upon the treating source the

authority to make the determination or decision about whether an individual is under a disability,

and thus would be an abdication of the Commissioner's statutory responsibility to determine

whether an individual is disabled.'").  "[A]n ALJ does not improperly assume the role of a

medical expert by assessing the medical and non-medical evidence before rendering a residual

functional capacity finding."  *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir.

2009).

> In his decision, the ALJ did consider the medical opinion of NP Bjork:
>
> > The undersigned also gives some weight to Ms. Bjork's opinion that the claimant's traumatic brain injury and headaches affected his ability to work.  She noted that the claimant needed to go to a quiet dark area at least one-to-two times per week for up to an hour.  While the claimant's traumatic brain injury is does [sic] cause work related restrictions, there is no objective evidence to justify the need for frequent breaks.  As discussed above, an MRI of the brain was unremarkable and neurologic examinations did not reveal abnormalities consistent with such severe limitations.

Tr. at 25 (citations omitted).  Upon review of the evidence, the ALJ's analysis of NP Bjork's

opinion, in light of all of the evidence of record, is thorough and complete. Regardless, Plaintiff

believes the ALJ should have relied on the single part of NP Bjork's opinion that stated that

Plaintiff's "[h]eadaches result in going to a quiet dark area 1-2 times a week, 30 minutes to one

hour" because this supports Plaintiff's conclusion that he is incapable of working at any level. Tr. at 25; 912. Notably, however, immediately after making this notation in her report, NP Bjork indicated that Plaintiff's MRI results were normal. Tr. at 912. Moreover, the ALJ was under no requirement to follow this single conclusion by NP Bjork; and, the ALJ appropriately did not follow her opinion in this case due to the lack of objective medical evidence on record to support her conclusion (as exemplified in the excerpt from the previous section).

Furthermore, an ALJ's RFC determination is supposed to represent the "most [a person] *can* still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1) (emphasis added). Therefore, despite Plaintiff's complaints of chronic headaches, there is sufficient evidence on record to support the ALJ's RFC finding that Plaintiff can, at most, perform sedentary work.

Based on a review of the ALJ's decision, it is clear that the ALJ adequately considered all of the medical and non-medical evidence of record in making her RFC determination. *Poe*, 342 Fed. App'x at 157. As a result, the ALJ's RFC finding is supported by substantial evidence, and this Court affirms the ALJ's decision. *See Jones*, 336 F.3d at 475 (noting that this Court affirms the ALJ's decision when there is sufficient medical evidence to support the ALJ's conclusions).

Plaintiff's final argument is that the ALJ did not afford sufficient weight to the opinion of LMSW Kim Green. Docket # 10 at 11-19. Regarding Ms. Green's report, the ALJ included the following in her decision:

> The undesigned gives little weight to the February of 2014 opinion offered by Kim Green, L.C.S.W. Regarding the claimant's anxiety disorder, she noted that the claimant had generalized persistent

asthma with motor tension, autonomic hyperactivity, apprehensive expectation and vigilance and scanning. She further noted that the claimant exhibited persistent and irrational fears, experienced recurrent obsessions or compulsions that were a source of marked distress and experienced recurrent and intrusive recollection of a traumatic experience that were a source of marked distress. Ms. Green opined that the claimant had marked limitations in activities of daily living and moderate limitations in social functioning, in concentration, persistence or pace and in episodes of decompensation. Regarding the claimant's depressive disorder, she likewise noted that the claimant experienced several symptoms. She noted that the claimant had moderate limitations in social functioning and in concentration, persistence or pace and that the claimant had marked limitations in activities of daily living and in episodes of decompensation. The undersigned has not assigned significant weight to Ms. Green's opinions for several reasons. She is a social worker and not an acceptable medical source. Her opinion has been considered, but the restrictions provided are inconsistent with the claimant's reported activity level and the observations of examiners and other treating providers.

Tr. at 27.  A social worker is not an acceptable medical source within the meaning of the Social Security Act. 20 C.F.R. § 414.1513(a) (including only licensed physicians, licensed or certified psychologist, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists); *see* SSR 06-03p, 2006 WL 2329939, at *2  (noting that only acceptable medical sources may be given controlling weight).  Rather, Ms. Green is considered to be an "other source" under the Act—meaning, her opinion is entitled to *consideration* given her longstanding relationship with Plaintiff.  20 C.F.R. § 404.1513(d)(1); *see Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) (noting that a social worker that was plaintiff's treating counselor should be considered by the Commissioner).  Based on the excerpt above, it is clear that the ALJ *considered* Ms. Green's opinion when determining Plaintiff's mental RFC finding, which is all she was required to do.  *See* 20 C.F.R. § 404.1513(d)(1).

Even if Ms. Green was an acceptable medical source, the ALJ was under no obligation to afford her opinion great weight because, under the Act, opinions of long-term treating physicians are only given "great weight" when the opinions are supported by "sufficient clinical findings and are consistent with the evidence." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1527(c). As discussed above, the ALJ accurately found that the restrictions noted by Ms. Green "are inconsistent with the claimant's reported activity level and the observations of examiners and other treating providers."[3] Tr. at 27. Therefore, the ALJ did not inappropriately disregard Ms. Green's opinion, and his decision to afford her little weight is supported by the evidence of record.

Therefore, based on the ALJ's reasoned decision and upon review of the medical opinions and non-medical evidence of record, it is clear that there is substantial evidence to support the ALJ's overall RFC finding. Thus, this Court affirms the ALJ's RFC determination.

Plaintiff's request to remand this case to the Social Security Administration pursuant to Sentence Four or Six of 42 U.S.C. § 405(g) is denied. There is substantial evidence in the record that supports the Commissioner's decision that Plaintiff was not disabled as defined by the Social Security Administration. In addition, Plaintiff has not provided new or previously unavailable evidence to support his claim. *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990) (noting that new evidence is that which did not exist or was unavailable at the time of the hearing). In fact, Plaintiff makes no argument that he has new and material evidence for the

---

[3]Some inconsistencies are, for example, that Plaintiff reported being able to concentrate enough to drive a car, manage his finances, watch young children, and volunteer on a school bus (Tr. at 24 (citing Ex. 6E at 9-10)), and that the State Agency medical consultant found that Plaintiff did not have episodes of decompensation for extended duration, and that Plaintiff could perform one and two step tasks regularly. Tr. at 26 (citing Ex. 20F at 3).

courts to consider on remand.  Instead, Plaintiff argues that his previously admitted evidence was improperly considered by the ALJ.  Consequently, this Court concludes the Plaintiff has not met her burden to grant a reversal or remand in his case pursuant to Sentence Four or Six of 42 U.S.C. § 405(g).

Accordingly, the decision of the Commissioner is **AFFIRMED** (docket # 11) and Plaintiff's request for relief is **DENIED** (docket # 10).

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: 10/28/2015

___/s/ *Timothy P. Greeley*_____
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE